**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KAYLA HELLER,

        Plaintiff,

v.

CITY OF MARKHAM AND
JACK GENIUS,

        Defendants.

Case 26-cv-00709
Judge Franklin U. Valderrama

**ORDER**

Plaintiff Kayla Heller (Heller) was a patrol officer for the City of Markham (the City) and Jack Genius (Genius) was the Chief of Police for the City. Heller claims that she was fired in retaliation for a complaint she made about Genius engaging in unlawful conduct. So, Heller sued the City and Genius (collectively Defendants) asserting a claim under the Illinois Whistleblower Act, Section 740 ILCS 174/1 *et. seq.*, (Count I); a First Amendment retaliation claim under 42 U.S.C. § 1983 (Count II), a claim under the Illinois Wage Payment and Collection Act, Section 820 ICLS 115/1 *et. seq* (Count III) and an indemnification claim against the City (Count IV). R. 1. Complaint.[1] Before the Court is Defendants' Motion to Dismiss Counts I – III of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 2. For the reasons that follow, Defendants' motion is denied.

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

## Background[2]

In December 2024 Heller began working as a probationary police officer for the City with the rank of patrol officer. Compl. ¶ 13. Her probationary period was 12 months, as specified in the Collective Bargaining Agreement between the City and the Illinois Council of Police. *Id.* at ¶ 14. Heller claims she performed the duties of a patrol officer well above her employer's expectations and her performance reviews were excellent during the probationary period. *Id.* at ¶ 15.

In October 2025 Heller was on routine patrol when she ran the license plate of a car and learned that the car's registration was suspended for a mandatory insurance violation. *Id.* at ¶ 16. Heller initiated a traffic stop and the driver of the car identified himself as Tyrone Muhammad (Muhammad). *Id.* at ¶¶ 16–17. Muhammad is a candidate to replace retiring United States Senator Dick Durbin, which becomes relevant below. *Id.* at ¶ 17. When Muhammad was unable to provide proof of insurance, Heller asked Muhammad to step out of the car and called a tow truck to impound it. *Id.* at ¶¶ 18–19.

While waiting for the tow truck, Heller conducted an inventory search of the car and found a loaded Smith & Wesson pistol in the center console. *Id.* at ¶ 20. After checking with dispatch, Heller learned Muhammad did not have an Illinois State Police-issued Concealed Carry License or a Firearm Owners Identification card. *Id.* at ¶ 20. In Illinois, it is a felony-level offense to carry an uncased, loaded, accessible firearm in public or in a vehicle if the individual does not have a Concealed Carry

---

[2] The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of Heller. *See Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

License or a Firearm Owners Identification card. *Id.* at ¶ 21. Heller informed Muhammad she was placing him under arrest for Aggravated Unlawful Possession of a Weapon. *Id.* at ¶ 23. Throughout the stop and arrest, Muhammad was on the phone with Tracy Bey, the Operations Director of Ex Cons for Community and Social Change and a candidate for 4th Ward Alderperson in Chicago. *Id.* at ¶¶ 19, 22, 28.

Heller took Muhammad to the City police station. *Id.* at ¶ 24. Soon after arrival, Heller received a phone call from Genius ordering that she release Muhammad without charging him with Aggravated Unlawful Possession of a Weapon and that Muhammad's car be released from the impound lot without assessing fees. *Id.* at ¶ 25. Muhammad was released immediately and Heller wrote a ticket for driving with suspended registration for a mandatory insurance violation. *Id.* at ¶ 26. She did not charge Muhammad with Aggravated Unlawful Possession of a Weapon. *Id.* at ¶ 25. The next evening, two SUVs with government-issued license plates escorted Muhammad's car from the impound lot. *Id.* at ¶ 29.

The morning after Muhammad's arrest and release, Heller made a whistleblower complaint to the Cook County State's Attorney and Illinois State Police alleging Genius engaged in unlawful conduct related to ordering Muhammad's release without charges. *Id.* at ¶ 27. After Genius learned about Heller's complaint, he opened a disciplinary investigation into her conduct. *Id.* at ¶ 30.

At a disciplinary hearing in November 2025, Heller alleges she was read her Garrity Rights and questioned at length about the whistleblower complaint. *Id.* at ¶ 34. Heller alleges that she was not asked about violations of law or police procedure

3

at that time. *Id.* at ¶ 34. A transcript of the interrogation was never made available to her. *Id.* at ¶ 33.

Heller alleges that in December 2025, Genius called her to his office and asked her if she was planning to resign in lieu of termination. *Id.* at ¶ 40. Heller refused to resign, and Genius terminated her effective immediately. *Id.* at ¶¶ 41–43.

Heller sued Defendants asserting claims under the Illinois Whistleblower Act (740 ILCS 174/15(b)) (Count I); First Amendment retaliation pursuant to 42 U.S.C. § 1983 (Count II); violation of the Illinois Wage Payment and Collection Act, Section 820 ICLS 115/1 *et. seq.* (Count III) and indemnification (Count IV). Defendants move to dismiss Counts I – III of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The fully-briefed motion is before the Court.

### Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### Analysis

Defendants, in their motion, attach the Collective Bargaining Agreement (CBA) between the City and the Illinois Council of Police (Exhibit B). According to Defendants, the Court can consider this document in its analysis because it is referenced in the complaint. Mot. Dismiss at 1–2. Notably, Heller does not address the CBA and whether the Court can consider it in resolving this motion.

Generally, a court "cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment." *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). There are exceptions to this general rule, however. One such exception is the doctrine of incorporation by reference. Under this doctrine, a court may consider extraneous materials on a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).[3] Here, Heller does not attach the CBA as an exhibit. But she does reference the CBA at various points in the complaint, and indeed, in her Illinois Wage Payment and Collection Act (IWPCA) count, she relies on specific sections of

---

[3]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

the CBA as a basis for her claim. *See* Compl. ¶¶ 14, 71–76. The Court thus agrees with Defendants and finds that Heller's complaint references the CBA and that it is central to her IWPCA claim. Therefore, the Court may consider the CBA without converting the motion to dismiss into a motion for summary judgement. The Court now turns to the substance of the parties' arguments.

Defendants move to dismiss Counts I – III of the complaint for failure to state a claim. The Court addresses the arguments as presented in Defendants' motion to dismiss.

### I. Count II – First Amendment Retaliation Claim

In Count II, Heller alleges that she engaged in protected speech when she made a whistleblower complaint to the Cook County State's Attorney and the Illinois State Police raising concerns about Genius engaging in illegal conduct relating to Muhammad's release. *See generally* Compl. ¶¶ 62–70. She contends that Defendants terminated her due to the content of this speech, in violation of her First Amendment right to free speech. *Id*. Defendants argue that Heller's First Amendment retaliation claim should be dismissed because when Heller made the complaint, she was acting in her official capacity as a government employee and not as a private citizen, thus the speech at issue was not constitutionally protected.

Citizens do not surrender their First Amendment protections by virtue of accepting public employment. *Lane v. Franks*, 573 U.S. 228, 231 2014). As the Seventh Circuit has explained, "[p]ublic employees do not sign away their free speech rights when answering the call to public service; at the same time, public employees'

rights to free speech are not absolute." *Hicks v. Ill. Dep't of Corr.*, 109 F.4th 895, 900 (7th Cir. 2024). The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (quoting *Garcetti*, 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Carter v. Ill. Gaming Bd.*, 2020 WL 1639914, at *3 (N.D. Ill. Apr. 2, 2020).

To state a First Amendment retaliation claim, a public employee must allege that she (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the speech was at least a motivating factor in the adverse employment action. *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016). Here, Defendants challenge only the first requirement by arguing that Heller did not engage in protected activity. *See generally* Mot. Dismiss at 5–8.

As a public employee, Heller's speech is protected by the First Amendment only if: "(1) [s]he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed

by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (cleaned up).

Defendants first argue that Heller's First Amendment retaliation claim fails because her complaints to the Cook County State's Attorney and Illinois State Police were made in her capacity as a public employee speaking pursuant to official duties, not as a private citizen. Mot. Dismiss at 6 (citing *Garcetti*, 547 U.S. at 421). Because her suspicions of misconduct were gathered through the course of her responsibilities as the arresting officer, Defendants argue, Heller's complaint owed its existence to her official duties. Mot. Dismiss at 7 (citing *Abcarian v. McDonald*, 931, 937 F.3d 931 (7th Cir. 2010)). While Defendants concede that Heller had no formal reporting responsibility to either Cook County State's Attorney or the Illinois State Police, the way they see it, because her complaint was related to her work responsibilities, her complaint was thus *pursuant* to her official responsibilities. Mot. Dismiss at 8 (citing *Ulrey v. Reichhart*, 941 F.3d 255, 259–60 (7th Cir. 2019); *McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013)).

In response, Heller maintains that she has adequately pled a First Amendment retaliation claim. Resp. at 10. Conceding that public employees do not speak as citizens for First Amendment purposes when making statements pursuant to their official duties, Heller insists that her reporting fell *outside* of her official duties and is therefore constitutionally protected activity. Resp. at 6. From Heller's perspective, her complaint fell outside the scope of her official duties because "[a]n employee is not speaking pursuant to [her] official duties when [s]he reports misconduct outside

established channels' or reports something for which [s]he did not have any formal responsibilities." Resp. at 9 (citing *Logan v. City of Chicago*, 2018 WL 5279304 at *10 (N.D. Ill. Oct. 24, 2018)). Heller concludes that she spoke as a private citizen because her complaint alleged political favoritism and corruption, which her official duties did not require her to investigate, and she directed her complaint to outside agencies. Resp. at 6 (citing *Kristofek*, 832 F.3d at 793; *Logan* 2018 WL 5279304 at *10). The Court agrees with Heller.

Recall, that if a "public employee reports official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties, and her speech is unprotected by the First Amendment." *Carter v. Ill. Gaming Bd.*, 2020 WL 1639914, at *3 (N.D. Ill. Apr. 2, 2020) (collecting cases). But if an employee "reports misconduct outside official channels or in violation of official policy, she speaks as a private citizen and her speech may be constitutionally protected." *Id*. Here, there is no allegation that Heller reported the alleged misconduct in a manner directed by official policy. Nor is there any allegation that Heller made the report to an external body with formal oversight over the City. So, Heller plausibly alleges that her complaint falls into the latter category, which would entitle her speech to constitutional protection.

Defendants' remaining argument, that Heller regularly interacted with the agencies she reported to and that she failed to cite a specific law she believed Genius broke, fares no better. Defendants do not explain why Heller's presumed regular

9

interaction with the Cook County State's Attorney's Office or the Illinois State Police would bring her complaint within the scope of her official duties. Neither do Defendants offer any rationale in support of their argument that Heller needed to articulate how Genius's conduct was unlawful for her claim to survive a First Amendment protection inquiry. Indeed, Defendants do not point the Court to any persuasive authority in support of either argument. Therefore, viewing the facts in the light most favorable to Heller, as the Court must at this juncture, the Court finds that Heller has plausibly pled a First Amendment retaliation claim.

## II. Count I – Illinois Whistleblower Act Retaliation Claim

In Count I, Heller alleges that Defendants violated the Illinois Whistleblower Act (IWA) when they subjected her to unlawful retaliation following her reporting of Genius's order to release Muhammad. Compl. ¶¶ 53–61.

The IWA bars employers from retaliating against employees who, among other things, alert government investigators to employer wrongdoing where they have a good faith basis to believe wrongdoing has occurred. *See generally* 740 ILCS 174/15. To adequately plead a violation of the IWA, a plaintiff must allege "(1) an adverse employment action by his or her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Cwik v. Manteno Cmty. Fire Port. Dist.,* 2024 WL 394614, at *5 (Ill. App. Ct. 2024).

Defendants argue that Heller's IWA claim should be dismissed as a matter of law because she fails to allege a specific law, rule, or regulation that Genius broke

10

(citing *Sweeney v. City of Decatur*, 2017 WL 1101773, at *3 (Ill. App. Ct. 2017)). Mot. Dismiss at 9. Defendants contend that because Heller did not state a specific law, rule, or regulation she believed Genius had violated, she fails to state a claim. Further, Defendants cite the Illinois Tort Immunity Act, arguing that Genius exercised legal discretion in choosing not to charge Muhammad, so he is immunized from liability under the Act. Mot. Dismiss at 9 (citing 745 ILCS 10/2-202).

Heller counters that her complaint pertained to unlawful political corruption, not a discretionary act. Resp. at 11. Heller maintains that her concern was the motivation behind the release, rather than the release itself. Resp. at 11 (citing *Martorana v. Village of Elmwood Park*, 2013 WL 1686869 (N.D. Ill. Apr. 18, 2013); *Bello v. Vill. of Skokie*, 2014 WL 4344391 at *23 (N.D. Ill. Sep. 2, 2014)). Moreover, Heller asserts that her report was based on a good faith belief that Genius's conduct was unlawful. Resp. at 11–12. As for Defendants' argument for dismissal under the Illinois Tort Immunity Act, according to Heller, that argument is unsupported and should be stricken. Resp. at 12.

The Court finds, contrary to Defendants' argument, that Heller is not required to allege a specific law, rule, or violation she believed was violated to state a claim under the IWA. The IWA provides, in relevant part, that to state a claim, an employee must show she was retaliated against for reporting "a *suspected* violation of an Illinois or federal law, rule, or regulation." (*Sweeney,* 2017 WL 1101773 at *3) (emphasis added). Defendants' interpretation reads "suspected" out of the IWA. Heller was not required to specify a particular law she believed Genius broke; mere reasonable

11

suspicion is sufficient to satisfy her burden at the pleading stage. Moreover, Defendants ignore the context provided by the sentence preceding the rule they cite from *Sweeney*: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has *reasonable cause to believe* that the information discloses a violation of a State or federal law, rule, or regulation." *Id.* (emphasis added). To this point, Heller directly states she had a reasonable belief that unlawful conduct had occurred when she made her report. Compl. ¶ 59. Since Heller claims she had reasonable cause to believe that Genius's order to release Muhammad was unlawful (and the Court accepts her well-pleaded facts as true and construes reasonable inferences in her favor), she plausibly alleges a suspected violation of an Illinois or federal law, rule, or regulation.

### III. Count III – Illinois Wage Payment and Collection Act Claim

In Count III, Heller alleges that Defendants violated the Illinois Wage Payment and Collection Act (IWPCA) by failing to pay her final wages. ¶¶ 71–76. Heller claims that the City refused to reimburse her for 80 hours of accrued vacation time and 23.33 accrued but unused sick days under the CBA, which are considered final compensation pursuant to the IWPCA. *Id.*

The IWPCA protects separated employees by requiring employers to pay final compensation, including paid vacation time if provided by the employer, by the employee's next regularly scheduled payday after separation. *See generally* 820 ILCS 115/5. To state a claim under the IWPCA, a person "must plead that wages or final compensation is due to him or her as an employee from an employer under an

employment contract or agreement." *Landers-Scelfo v. Corporate Office Systems*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005), citing 820 ILCS 115/2. The IWPCA also provides, in relevant part, that "unless provided for by a collective bargaining agreement," an employee should be paid the "equivalent of all earned vacation. . . as part of her final compensation." 820 ILCS 115/5. At issue here is whether Heller has plausibly alleged facts sufficient to show the City owes final compensation for accrued vacation time and accrued but unused sick leave under the CBA.

Defendants move to dismiss Heller's claim, arguing that the CBA precludes any claim for benefits. From Defendants' point of view, the CBA specifies that vacation benefits only vest after the completion of the probationary period. Mot. Dismiss at 10. Since Heller was terminated before completing the probationary period, Defendants reason that her vacation benefits never vested, so the City does not owe her final compensation pursuant to the IWPCA. *Id.* Defendants insist that Heller is "not entitled to any recourse or grievance procedure of benefits pursuant to the CBA" due to Heller's failure to complete the probationary period. *Id.*

Whether or not Heller is entitled to accrued vacation and unused sick days under the CBA is a factual inquiry appropriately determined at summary judgment. *See Kalechstein v. Abbassian*, 2015 WL 13877482, at *2 (N.D. Ill. Dec. 3, 2015). Indeed, Defendants' motion does not argue that Heller has not plausibly alleged sufficient facts on this claim, only that under their interpretation of the CBA, she is not entitled to pay. Viewing the evidence in the light most favorable to plaintiff, Heller plausibly alleges she had earned vacation allowance and unused sick days at the time of her

13

termination that went unpaid. Therefore, the Court denies the motion to dismiss on this front.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss R. [12] is denied.

DATED: July 7, 2026

United States District Judge
Franklin U. Valderrama

14